UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., | No. C-10-5126 CW (EMC) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| ROXANNE MONIQUE MOSLEY, *et. al.*, | |
| Defendants. | **(Docket No. 15)** |

Plaintiff J&J Sports Productions, Inc. ("J&J") has filed suit against Defendant Roxanne Monique Mosley, individually and doing business as the Sweet Fingers a/k/a Sweetfingers Jamaican Restaurant. According to J&J, Ms. Mosley violated both federal and state law by intercepting and exhibiting a particular television program to which J&J was granted exclusive distribution rights. After Ms. Mosley failed to respond to the complaint in a timely fashion, his default was entered, *see* Docket No. 13 (Notice of Entry of Default), and J&J moved for a default judgment. The assigned judge referred J&J's motion for default judgment to the undersigned for a report and recommendation.

Having considered the papers submitted by J&J, and having held a hearing on the instant motion on March 30, 2011, at which Ms. Mosley did not appear, the Court hereby recommends that the motion for default judgment be **GRANTED**.

///

///

///

## I.   FACTUAL & PROCEDURAL BACKGROUND

J&J's complaint and evidence submitted in support of its motion for default judgment establish the following.

J&J is a closed circuit distributor of sports and entertainment programming. *See* Gagliardi Aff. ¶ 3. J&J was granted exclusive nationwide commercial distribution (closed circuit) rights to a particular television program, namely, *"Firepower: Manny Pacquiao v. Miguel Cotto WBO Welterweight Championship Fight."* The program – which included undercard bouts – was to be broadcast on November 14, 2009. *See* Compl. ¶ 9; Gagliardi Aff. ¶¶ 3, 7. J&J entered into sublicensing agreements with various commercial entities pursuant to which it granted these entities limited sublicensing rights – more specifically, the rights to publicly exhibit the program within their respective commercial establishments. *See* Compl. ¶ 10; Gagliardi Aff. ¶ 3.

On November 14, 2009, one of J&J's investigators, Gary Gravelyn, entered a commercial establishment known as Sweetfingers, which is owned by Ms. Mosley. *See* Gravelyn Aff. at 1; Compl. ¶¶ 7, 12. Mr. Gravelyn paid no cover charge to enter the establishment. *See* Gravelyn Aff. at 1. Mr. Gravelyn observed one television set in the establishment. *Id.* The television was showing the program at issue – more specifically, the third round of the bout between Manny Pacquio and Miguel Cotto. *See id.* J&J has submitted evidence indicating that it is highly unlikely that the program at issue was innocently or accidentally intercepted. *See* Gagliardi Aff. ¶ 9 *et seq.*

Mr. Gravelyn did not see a cable box or a satellite dish in or at the establishment. *See* Gravelyn Aff. at 1. In the eight minutes that Mr. Gravelyn was at the establishment, he counted approximately seventeen people (two different head counts). *See id.* at 1-2.

Based on the above, J&J asserted the following causes of action in its complaint against Ms. Mosley: (1) violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; (3) conversion; and (4) violation of California Business & Professions Code § 17200. J&J does not include its fourth claim in its motion for default judgment, however.

///

///

///

## II. **DISCUSSION**

A. Service of Process

In deciding whether to grant or deny a default judgment, a court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). Under Federal Rule of Civil Procedure 4(e), Ms. Mosley may be served pursuant to the law of California, where this Court is located. *See* Fed. R. Civ. P. 4(e)(1). California law allows for substituted service on an individual where the summons and complaint cannot, with reasonable diligence, be personally delivered. *See* Cal. Code Civ. Proc. § 415.20(b).

J&J has submitted a declaration from a process server indicating that Ms. Mosley could not, with reasonable diligence, be personally served. *See* Docket No. 11 (reflecting three attempts at personal delivery prior to substituted service). The declaration also reflects that substituted service in accordance with § 415.20 was effected. That is, the declaration reflects that a copy of the summons and complaint was (1) left with an adult "person in charge" at Sweetfingers Restaurant who was "informed of the contents thereof" on December 9, 2010 and (2) mailed "by first-class mail, postage prepaid" to Ms. Mosley at Sweetfingers in San Leando, California on December 10, 2010. *See* Cal. Code Civ. Proc. § 415.20(b). Accordingly, the Court finds that service of process was properly effected.

B. *Eitel* Analysis

As noted above, Ms. Mosley's default was entered after he failed to respond to the complaint. After entry of a default, a court may grant a default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. A default judgment may not be entered, however, against an infant or incompetent person unless represented in the action by a general guardian or other such representative who has appeared. *See id.* Furthermore, a default judgment may not be entered against an individual in military service until after the court appoints an attorney to represent the defendant. *See* 50 U.S.C. App. § 521. In the instant case, J&J has provided sufficient evidence demonstrating that Ms. Mosley is not an infant, incompetent person, or a person in military service.

3

United States District Court
For the Northern District of California

*See* Riley Decl. ¶ 3; Docket No. 11 (Proof of Service). Accordingly, the Court may consider whether a default judgment may be entered against Ms. Mosley.

"The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Upon entry of default, the factual allegations of the plaintiff's complaint will be taken as true, except for those relating to the amount of damages. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

The Court concludes that many of the *Eitel* factors weigh in favor of granting J&J default judgment. For example, J&J would be prejudiced if default judgment were not granted because it would be denied the right to judicial resolution of its claims and would likely be without other recourse for recovery. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Also, the sum of money at stake in the action is, for the most part, tailored to the specific misconduct of Ms. Mosley. *See id.* at 1176 (stating that "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct"). In addition, because Ms. Mosley has not filed an answer to the complaint, there is nothing to suggest that there is a possibility of a dispute concerning material facts. Finally, there is no indication that Ms. Mosley's default was due to excusable neglect. The Court notes that not only were the summons and complaint served on Ms. Mosley but also the motion for entry of default, *see* Docket No. 13 (proof of service), and the currently pending motion for default judgment. *See* Docket No. 18 (proof of service). Furthermore, Ms. Mosley was given notice of the hearing on the motion for default judgment, *see* Docket No. 11 (certificate of service), but did not appear.

The only factors that deserve closer analysis are the second and third factors – *i.e.*, the merits of J&J's substantive claim and the sufficiency of the complaint. "The Ninth Circuit has suggested that these two factors require that a plaintiff 'state a claim on which the [plaintiff] may recover.'" *Pepsico*, 238 F. Supp. 2d at 1175.

J&J has asserted various federal and state claims in its complaint and seeks damages pursuant to § 605. The Court concludes that J&J has failed to adequately state a claim for relief under § 605, but that is has stated a claim under § 553 and a claim for conversion.

47 U.S.C. § 605 "prohibits commercial establishments from intercepting and broadcasting to its patrons *satellite* cable programming." *J&J Sports Prods., Inc. v. Ro*, No. C 09-02860, 2010 U.S. Dist. LEXIS 21425, at *7 (N.D. Cal. Feb. 19, 2010) (internal quotation marks omitted; emphasis added). In contrast, 47 U.S.C. § 533 "prohibits a person from intercepting or receiving or assisting in intercepting or receiving any communications service offered over a *cable system*." *Id.* at *8 (internal quotation marks omitted; emphasis added). In other words, "[a] signal pirate violates section 553 if he intercepts a *cable* signal, [but] he violates [section] 605 if he intercepts a *satellite* broadcast." *J&J Sports Prods., Inc. v. Manzano*, No. C-08-01872 RMW, 2008 U.S. Dist. LEXIS 84931, at *6 (N.D. Cal. Sept. 29, 2008) (emphasis added); *see also Charter Communs. Entm't I v. Burdulis*, 460 F.3d 168, 173 (1st Cir. 2006) (stating that "[s]ection 605 deals with communications traveling through the air (via radio), whereas § 553 covers communications traveling over cable wire").

In the instant case, J&J alleges violations of both statutes. Since Mr. Gravelyn saw neither a cable box nor a satellite dish, J&J cannot determine the precise means used to access the program. *See* Gravelyn Aff. at 1. J&J argues that it "should not be prejudiced because it cannot isolate the precise means of signal transmission [Ms. Mosley] used." Pl.'s Mot. Mem. at 3. However, it is highly improbable that J&J used both cable and satellite to display the event. As between the two, it is less likely that satellite was used since the investigator looked for a satellite dish and did not see one. *See* Gravelyn Aff. at 1. *See generally J&J Sports Prods., Inc. v. Ro*, No. C 09-02860, 2010 U.S. Dist. LEXIS 21425, at *9 (N.D. Cal. Feb. 19, 2010) ("The fact that [the] investigator did not see a cable box and saw a satellite dish does not mean that there was not a device out of view to

5

receive cable transmissions."). As one court observed, "a cable box is more easily hidden," *J&J Sports Prods., Inc. v. Guzman*, No. C 08-05469 MHP, 2009 U.S. Dist. LEXIS 32273, at *6 (N.D. Cal. Apr. 16, 2009). Nor has J&J alleged, *e.g.*, that more business customers in the area received the program via satellite as opposed to cable. If J&J wanted to prove the means of signal transmission, "it could have filed a third party subpoena or requested an order for inspection. The fact that [Defendant] defaulted does not rule out [Plaintiff's] opportunity to take third-party discovery."[1] *Ro*, 2010 U.S. Dist. LEXIS 21425, at *9. The Court therefore concludes that J&J has failed to establish a claim for relief under § 605 and recommends denial of the motion for default judgment on the § 605 claim (Count I). The Court also finds, however, that J&J has adequately established a claim for relief under § 533 and recommends that default judgment be granted with respect to Count II.

The Court also recommends that the motion for default judgment be granted with respect to the conversion claim, as J&J has adequately stated a claim for relief. Under California law, the tort of conversion has three elements: (1) ownership or right to possession of property; (2) wrongful disposition of the property right of another; and (3) damages. *See G.S. Rasmussen & Assoc. v. Kalitta Flying Serv.*, 958 F.2d 896, 906 (9th Cir. 1992). In the instant case, J&J alleges that it obtained the distribution rights for the program at issue and that Ms. Mosley unlawfully intercepted the program and wrongfully converted it for his own use and benefit. *See* Compl. ¶¶ 9, 12, 24. J&J further alleges that Ms. Mosley deprived it of the license fee to which J&J would have been entitled had he obtained a license from J&J. *See* Compl. ¶ 25. Accordingly, the conversion claim is legally sufficient.

C.   Damages

While allegations of the complaint must be taken as true in establishing liability, the Plaintiff must prove up damages. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir.1992); *see generally* Fed. R. Civ. P. 55(b)(2). J&J requests damages totaling $112,200.

---

[1] The Court also notes that it is not unfair to hold J&J to its burden of proof given that (1) the minimum statutory damages under § 605 exceed those under § 553 and (2) the maximum enhanced damages under § 605 exceed those under § 553. *Compare* 47 U.S.C. § 605(e)(C)(3) (providing for statutory damages of "not less than $1,000 or more than $10,000" and enhanced damages of "not more than $100,000"), *with id.* § 553 (c)(3) (providing for statutory damages of "not less than $250 or more than $10,000" and enhanced damages of "not more than $50,000").

First, J&J seeks $2,200 in damages for the conversion claim. *See* Mot. at 15. California Civil Code § 3336 provides:

> The detriment caused by the wrongful conversion of personal property is presumed to be:
>
> First – The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and
>
> Second – A fair compensation for the time and money properly expended in pursuit of the property.

Cal. Civ. Code § 3336. Here, J&J has submitted evidence that the sublicense fee for the program at issue would have been at least $2,200. *See* Gagliardi Aff. ¶ 8 & Ex. 1 (showing rates). Accordingly, the Court recommends that J&J be awarded the $2,200 in damages that it requests.

J&J also requests $10,000 in damages–the statutory maximum – as well as $100,000 in enhanced damages – also the statutory maximum – under 47 U.S.C. § 605(e)(3)(C). The requested amount of enhanced damages is not available under § 553, however. *See* 47 U.S.C. § 553(c)(3) (providing for statutory damages of "not less than $250 or more than $10,000" and enhanced damages of "not more than $50,000").

As to statutory damages under § 553, Plaintiff may recover between $250 and $10,000, "as the court considers just" in statutory damages on its claim. 47 U.S.C. § 553(c)(3)(A)(ii). In its analysis of appropriate statutory damages, the Court may consider the cost of a commercial license for the program at issue (purportedly $1,000), Defendant's incremental profits, and the need to deter piracy. *See Ho*, 2010 U.S. Dist. LEXIS 109575, at *3 (noting that "[a] traditional method of determining statutory damages is to estimate either the loss incurred by the plaintiff or the profits made by the defendants") (citation and internal quotation marks omitted); *J&J Sports Prods., Inc. v. Montecinos*, No. C-09-02604 JSW (EDL), 2009 U.S. Dist. LEXIS 122709, at *12-18 (N.D. Cal. Dec. 17, 2009) (report and recommendation, subsequently adopted) (under § 605, concluding that maximum enhanced damages were not appropriate because the establishment did not promote itself by advertising the program, did not assess a cover charge, and did not charge a special premium for

7

food and drinks); *see also J&J Sports Productions, Inc. v. Lopez*, 2008 WL 2915109, *4 (E.D. Cal. 2008).

Mr. Gravelyn stated that he paid no cover charge to enter the establishment during the broadcast event. *See* Gravelyn Aff. at 1. He indicated that the restaurant advertised the event on a "greaseboard" on a window, presumably at the restaurant entrance, and described its rates as "good." *See id.* He did not order or pay for any food or drinks, and did not otherwise indicate that the establishment charge a premium on the price of drinks or food. There were some seventeen patrons in the restaurant at the time, and the Program was playing on the sole television. *Id.* It was of modest size (27"). *Id.* According to Mr. Gravelyn, the restaurant had the capacity to admit another eighty patrons. *Id.* ("The capacity of this establishment is approximately 100 people.").

In light of the absence of evidence of Plaintiff's damages, and the absence of any indication that Defendant is a repeat offender, the Court recommends an award of $2,500, the loss incurred by Plaintiff (which, given the modest number of patrons and the lack of a cover charge, probably exceeded J&J's profits) plus some margin for profits earned by J&J from the event. *See Ho*, *supra*. *Cf. J & J Sports Productions, Inc. v. Flores*, 2009 WL 1860520, *2 (E.D. Cal. 2009); *Kingvision Pay-Per-View, Ltd. v. Dosani*, 2006 WL 3316988 (S.D. Tex. 2006) (awarding $1,000 in statutory damages under 47 U.S.C. § 605 where the defendant played a pirated boxing match, there were sixteen customers in the establishment, and there was no evidence that the defendant advertised the match, that a premium was charged for food or drink, that an admission fee was charged, that the patrons were in the establishment solely for the match, or that the defendant was a repeat offender). *See also J&J Sports Productions, Inc. v. Montecinos*, 2010 WL 144817, *4 (N.D. Cal. Jan. 11, 2010) (awarding $5,000 in statutory damages, $10,000 in enhanced damages, and $3,750 for conversion after noting that "[b]ecause Defendants are repeat offenders, Plaintiff is entitled to more than the minimum statutory damages."); *J&J Sports Productions, Inc. v. Dailey*, No. 09-cv-4205-JW (N.D. Cal. March 19, 2010) (finding the defendant to be "a multiple offender for the purposes of a damages award under § 605" and awarding $2,500 in statutory damages, $2,500 in enhanced damages, and $1,000 for conversion); *J&J Sports Productions, Inc. v. Esquivel*, 2008 WL 4657741 (E.D. Cal. 2008) (awarding $10,000 under § 553 plus $10,000 in enhanced damages after noting the

8

"relatively small impact of Defendant's actions" where the establishment had a maximum capacity of 75 people, 35 people were present during the presentation of the pirated program, which was playing on a single 27" screen); *J&J Sports Productions, Inc. v. Flores*, 2009 WL 1860520, *2 (E.D. Cal. 2009) (awarding $10,000 in statutory damages where there was no cover charge and 35 patrons in the establishment during the presentation of the pirated program).

Although J&J cites authority in support of its position that the statutory maximums should be awarded, that authority largely comes from outside this district. In this district, courts have typically awarded less than the statutory maximums. *See, e.g.*, *J&J Sports Prods., Inc. v. Ho*, No. 10-CV-01883-LHK, 2010 U.S. Dist. LEXIS 109575 (N.D. Cal. Oct. 5, 2010) (under § 605, awarding $1,600 in statutory damages and $10,000 in enhanced damages); *J&J Sports Prods., Inc. v. Cardoze*, No. C 09-05683 WHA, 2010 U.S. Dist. LEXIS 74606 (N.D. Cal. July 9, 2010) (under § 553, awarding $1,000 in statutory damages and $250 in enhanced damages); *J&J Sports Prods., Inc. v. Dailey*, No. C 09-04205 JW, slip. op. (N.D. Cal. Mar. 19, 2010) (under § 605, awarding $2,500 in statutory damages and $2,500 in enhanced damages); *J&J Sports Prods., Inc. v. Montecinos*, No. C-09-02604 JSW (EDL), 2009 U.S. Dist. LEXIS 122709, at *12-18 (N.D. Cal. Dec. 17, 2009) (report and recommendation, subsequently adopted) (under § 605, concluding that maximum statutory damages were not warranted because "there has been no evidence that Defendants received significant financial benefits"; also concluding that maximum enhanced damages were not appropriate because the establishment did not promote itself by advertising the program, did not assess a cover charge, and did not charge a special premium for food and drinks). Notably, courts in this district have declined to award the maximum enhanced damages even where the defendant is a "repeat offender." *See, e.g.*, *Ho*, 2010 U.S. Dist. LEXIS 109575, at *4-5; *Dailey*, No. C09-04205 JW, slip. op. at 6.

The Court has discretion to enhance a damage award with additional damages up to $50,000 where "the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain . . . ." 47 U.S.C. § 533(c)(3)(B). J&J contends that the evidence before the Court justifies an inference that Defendant acted wilfully in unscrambling the signals transmitting copyrighted material. The Court agrees that such an inference is justified here, in light of the nature of the violation. *Cf. J & J Sports Productions, Inc. v. Garcia*, 2009 WL 2567891, *4

(S.D. Tex. 2009) ("The Defendant must have engaged in a deliberate act since 'signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.'") *quoting Time-Warner Cable of N.Y. v. Googies Luncheonette, Inc.,* 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999). The Court recommends that an award of enhanced damages of $2,500 be imposed. Together with the statutory damages, the award under § 553 totals $5,000. Such an award (particularly in light of the conversion damages and fees and costs discussed below) serves the purpose of removing profits from the defendant and deterring future piracy.

D. <u>Attorney's Fees and Costs</u>

Plaintiff requests an award of costs, including attorney's fees, expended on this case. The Court has discretion to grant such a request by a prevailing party pursuant to 47 U.S.C. § 553(c)(2)(C). Plaintiff's counsel has provided a declaration substantiating the request for $1,045 in costs ($600 for investigative expenses + a $350 filing fee + $95 for service of process) and $1,566.23 in attorney's fees (2.225 attorney-hours at $450/hr. plus hourly fees for paralegal ($225) and administrative $339.98) services). The Court finds this request to be adequately documented and reasonable under the circumstances. The Court therefore recommends granting Plaintiff's request for an award of attorney's fees and costs totaling $2,611.23.

### III. RECOMMENDATION

For the foregoing reasons, the Court recommends that J&J's motion for default judgment be granted with respect to Counts II and III of the Complaint and denied with respect to Count I. The Court recommends that J&J be awarded $2,200 in damages for conversion, and $5,000 in statutory and enhanced damages under 47 U.S.C. § 553(c). The Court further recommends awarding $2,611.23 in attorney's fees and costs pursuant to 42 U.S.C. § 553(c)(2)(C). Total damages recommended amount to $9,811.23.

///
///
///
///
///

10

J&J is ordered to serve a copy of this report and recommendation on Ms. Mosley within three days of the date of this order and file a proof of service with the Court.

Any party may file objections to this report and recommendation with the district judge within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.

Dated: April 13, 2011

_____
EDWARD M. CHEN
United States Magistrate Judge